UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12CR 95 AGF/LMB |
| | ) | |
| IRVIN R. EDDINGTON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

The defendant, Irvin R. EDDINGTON, Jr., is charged in a two-count indictment with Count One, Embezzlement, and Count Two, Bank Fraud.

The defendant was Vice-President and Branch Manager of the Ellington, Missouri, Branch of People's Community State Bank (PCSB), a federally-insured bank. Among his duties as Vice-President, Defendant Eddington was responsible for making lending decisions. He was also responsible for servicing the day-to-day banking needs of customers of the bank, servicing loans made by the bank, and maintaining customer relationships.

The defendant has filed his Motion to Dismiss Count Two of the Indictment for Insufficiency and Failure to State Offense (Document #23). In the process of determining whether the indictment is sufficient to state a crime, the court will take the factual allegations of the indictment as true and make its determination based on the statements contained on the face of the indictment. Costello v. United States, 350 U.S. 359, 363 (1956).

Title 18 § 1344. **Bank fraud** provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice–
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The statements in Count Two of the indictment can be considered the factual basis for the charge since the allegations in the indictment are to be taken as true. Costello, supra; United States v. Steffen, 687 F.3d 1104, 1107 n. 2, citing United States v. Farm and Home Savings Association, 932 F.2d 1256, 1259 n. 3 (8th Cir. 1991). Count Two of the indictment states as follows:

## COUNT TWO

The Grand Jury further charges that:

5. Paragraphs 1 through 3 are incorporated herein by reference as though realleged here in their entirety.

6. From on or about January 6, 2004 and continuing through on or about October 5, 2011, **Defendant Eddington** devised a scheme and artifice to defraud PCSB, a financial institution insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of said financial institution by means of false and fraudulent pretenses and representations.

7. **Defendant Eddington** had lending authority of $10,000 for unsecured loans and $50,000 for secured loans. **Defendant Eddington's** lending authority applied to all lending products offered by PCSB, including irrevocable letters of credit. Accordingly, for any potential new irrevocable letters of credit whose value exceeded these limits, **Defendant Eddington** was required to present the potential letter of credit to the PCSB Board of Directors (hereinafter "the Board") at their monthly Board meeting or at least three members of the Board, and obtain their approval before it could be issued.

8. Regardless of whether a letter of credit was above or below his lending authority, **Defendant Eddington** was required to forward the letter of credit and supporting documents to the bank's Cashier. The Cashier would then record the issued letter of credit in a running log listing all outstanding letters of credit. Each month, the list of outstanding letters of credit was included in a comprehensive report to the Board listing all outstanding bank obligations. The Board, and all others present, discussed the contents of the monthly report, including the list of irrevocable letters of credit, at its monthly meeting.

9. As an executive officer of the bank, **Defendant Eddington** attended these monthly Board meetings on a regular basis. Those in attendance, including **Defendant Eddington**, were generally asked by bank management if they had anything to include that may have been left off the monthly report provided to the Board.

10. It was part of the scheme or artifice to defraud that beginning on or

about January 15, 2004 and continuing through on or about September 30, 2010, **Defendant Eddington** fraudulently created and issued to his personal associates numerous unsecured irrevocable letters of credit from PCSB without the knowledge or approval of the Board.  Unbeknownst to the Board, but known to **Defendant Eddington**, these associates then secured loans from other entities known to the Grand Jury using the irrevocable letters of credit as collateral.

11.  It was further part of the scheme or artifice to defraud that **Defendant Eddington** only reported to the Cashier for inclusion on the log certain letters of credit authorized by and known to the Board, but did not report those unauthorized irrevocable letters of credit he had issued on his own to his associates.

12.  It was also part of the scheme or artifice to defraud that **Defendant Eddington** caused to be submitted to the Board false monthly reports by the Cashier that did not list or include the additional irrevocable letters of credit issued by **Defendant Eddington** without the Board's knowledge or approval.

13.  It was further part of the scheme or artifice to defraud that **Defendant Eddington**, when present at the monthly Board meetings, misrepresented to the Board the extent of outstanding irrevocable letters of credit by discussing only those outstanding letters of credit included in the monthly report to the Board, and not those unauthorized letters of credit **Defendant Eddington** issued to his associates - even though, as **Defendant Eddington** well knew, he was required as part of his job duties to report all outstanding irrevocable letters of credit to the

Board.

14. On or about September 30, 2011 in Ripley County within the Eastern District of Missouri,

**IRVIN R. EDDINGTON, Jr.**

the Defendant herein, knowingly and with intent to deceive, executed the scheme and artifice as set forth above in that the Defendant caused to be falsified the September 2011 monthly report to the Board that included certain authorized irrevocable letters of credit but did not include the unauthorized, unsecured irrevocable letter of credit issued to a person referred to herein as S.B. in the amount of $507,035.90.

In violation of Title 18, United States Code, Sections 1344 and 2.

A TRUE BILL.


**United States v. Steffen**

Both parties cite and rely on United States v. Steffen, 687 F.3d 1104 (8th Cir. 2012). In that case, the United States Court of Appeals for the Eighth Circuit affirmed the United States District Court for the Eastern District of Missouri, Judge Jean C. Hamilton, which granted defendant's motion to dismiss the indictment for failure to state an offense. The Steffen case provides a significant amount of law which is pertinent to our case.

"An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent

prosecution." United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993). Id. at 1109.

"On its face, the bank fraud statute provides two independent avenues for establishing an offense." Id. at 1109-1110. "18 U.S.C. § 1344. Subsection (2) expressly requires 'false or fraudulent pretenses, representations, or promises,' and we have also concluded that it 'appears to require "some loss to the institution, or at least an attempt to cause a loss."' United States v. Staples, 435 F.3d 860, 867 (8th Cir. 2006) (quoting United States v. Ponec, 163 F.3d 486, 488 (8th Cir. 1998)). In contrast, subsection (1) requires only that the defendant have engaged in some scheme or artifice to defraud." Id. A scheme to defraud does not require false representations. Id. at 1111-1112. "[O]ne may commit a bank fraud under Section 1344(1) by defrauding a financial institution, without making the false or fraudulent promises required by Section 1344(2). Thus, an indictment which ... tracks the language of both provisions is not dependent on proof of the [subsection] (2) elements." United States v. Celesia, 945 F.2d 756, 758-59 (4th Cir. 1991). Id. 1112. Steffen quotes United States v. Cronic, 900 F.2d 1511, 1513-14 (10th Cir. 1990) ("The offense of a scheme to defraud focuses on the intended end result, not on whether a false representation was necessary to effect the result. Schemes to defraud, therefore, may come within the scope of [section 1344] even absent an affirmative misrepresentation."). Id. at 1112.

"An indictment is normally sufficient if its language tracks the statutory language." United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008). However, where an indictment alleges a scheme to defraud under the bank, mail, or wire fraud statutes, it must specify facts "not merely in the general words of the statute, but with such reasonable particularity ... as will ... apprise [the defendant], with reasonable certainty, of the nature of the accusation ... and as will enable the court to say that the facts stated are sufficient in law to support a conviction." Brown v. United States, 143 F. 60, 62 (8th

Cir. 1906). Id. at 1113. Steffen states that the Supreme Court has found that a scheme to defraud under § 1344 must be interpreted with an eye toward the common-law understanding of fraud. Neder v. United States, 527 U.S. 1, 20-22, 119 S.Ct. 1827 (1999). Id. The Eighth Circuit found the Fourth Circuit's conclusions in United States v. Colton, 231 F.3d 890 (4th Cir. 2000), instructive:

> At common law, fraud has not been limited to those situations where there is an affirmative misrepresentation or the violation of some independently-prescribed legal duty .... Rather, even in the absence of a fiduciary, statutory, or other independent legal duty to disclose material information, common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from acquiring material information.

Id.

> [T]he common law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence. Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does.

Id. at 1114.

Steffen returns to Colton for further explanation of a scheme to defraud.

> As the Fourth Circuit in Colton and other courts have recognized, "acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent the other party from acquiring material information'" may demonstrate a scheme to defraud under sections 1341, 1343, and 1344(1). Colton, 231 F.3d at 898 (citation and alteration marks omitted). See also Neder, 527 U.S. at 22, 119 S.Ct. 1827 (noting that "the well-settled meaning of 'fraud'" includes "concealment of material fact" (emphasis omitted)); McNeive, 536 F.2d at 1251.

Id. at 1115.

Steffen draws further on Colton to distinguish passive concealment from active concealment.

> However, the Fourth Circuit also observed that the common law and the courts have historically drawn a distinction between "passive concealment -- mere

-7-

nondisclosure or silence -- and active concealment, which involves the requisite intent to mislead by creating a false impression or representation." Colton, 231 F.3d at 899. See also Stewart v. Wyo. Cattle Ranche Co., 128 U.S. 383, 388, 9 S.Ct. 101, 32 L.Ed. 439 (1888) (noting that "mere silence is quite different from concealment" and that silence must be accompanied by "concealment or suppression" in order to be equivalent to a false representation). The latter consists of "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter." Colton, 231 F.3d at 901.

Id.

## **Defendant's Claims**

In his Motion to Dismiss Count Two of the Indictment (Document #23-1), the defendant alleges the following grounds:

  1. Count two of the indictment does not allege all of the essential facts constituting an offense as required for a 18 U.S.C. § 1344 bank fraud violation, and does not advise Defendant of the nature and cause of the accusation made against him in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

  2. Count two of the indictment does not allege that : (1) Defendant obtained any property owned, controlled or under the custody of the bank; (2) Defendant made any express misrepresentation(s) to the bank; nor (3) Defendant received any bribe or kick-back for his alleged conduct.

  3. The statute under which Defendant is charged in count two of the indictment, 18 U.S.C. § 1344, is unconstitutional, is vague, is over-broad, is indefinite, fails to establish sufficient standards and denies due process of law in

violation of the Fourteenth Amendment.

The court assumes ¶ 2 of the motion to dismiss is a specification of the deficiencies the defendant describes in broad terms in ¶ 1.

## **Discussion**

As the parties acknowledge (Defendant's Memorandum, Document #24, p. 2; Government's Response, Document #25, p. 5), the bank fraud statute "provides two independent avenues for establishing an offense:" a defendant may scheme "(1) to defraud a financial institution" or "(2) to obtain any ... moneys ... or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises." Steffen, 687 F.3d at 1109-10 citing 18 U.S.C. § 1344.

As noted earlier, the Supreme Court has fleshed out what a scheme to defraud under sections 1341 (mail fraud), 1343 (wire fraud) and 1344 (bank fraud) consists of by finding that these statutes must be interpreted with an eye toward the common-law understanding of fraud. Neder v. United States, 527 U.S. 1, 20-22, 119 S.Ct. 1827 (1999). The Eighth Circuit then looked to United States v. Colton, 231 F.3d 890, 898-899 (4th Cir. 2000), which held "common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from acquiring material information." Colton held "fraudulent concealment – without any misrepresentation or duty to disclose – can constitute common-law fraud." And that concealment "is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." Id. Colton held further "although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment)

does."

The Fourth Circuit's description of concealment in the Colton case applies exactly to the events related in Count Two of the Eddington indictment:

> Between January 6, 2004, and October 5, 2011, Eddington devised a scheme and artifice to defraud People's Community State Bank (PCSB), a financial institution insured by the FDIC and to obtain money, funds, credits, assets and other property owned by and under the control of PCSB by means of false and fraudulent pretenses and representation. Eddington's lending authority was $10,000 for unsecured loans and $50,000 for secured loans. These limits applied to irrevocable letters of credit. For any potential new irrevocable letter of credit above those limits Eddington was required to present the potential letter of credit to the PCSB Board of Directors at their monthly Board meeting or to at least three members of the Board to obtain their approval before the irrevocable letter of credit could be issued. The defendant was required to forward <u>all</u> letters of credit (both within his authority and above his authority) along with supporting documents to the bank's Cashier. The Cashier would then record the issued letter of credit in a running log listing all outstanding letters of credit. Each month, the list of outstanding letters of credit was included in a comprehensive report to the Board listing all outstanding bank obligations. The Board, and all others present, discussed the contents of the monthly report, including the list of irrevocable letters of credit, at its monthly meeting.
>
> As an executive officer of the bank, **Defendant Eddington** attended these monthly Board meetings on a regular basis. Those in attendance, including

**Defendant Eddington**, were generally asked by bank management if they had anything to include that may have been left off the monthly report provided to the Board.

It was part of the scheme or artifice to defraud that beginning on or about January 15, 2004 and continuing through on or about September 30, 2010, **Defendant Eddington** fraudulently created and issued to his personal associates numerous unsecured irrevocable letters of credit from PCSB without the knowledge or approval of the Board. Unbeknownst to the Board, but known to **Defendant Eddington**, these associates then secured loans from other entities known to the Grand Jury using the irrevocable letters of credit as collateral.

It was further part of the scheme or artifice to defraud that **Defendant Eddington** only reported to the Cashier for inclusion on the log certain letters of credit authorized by and known to the Board, but did not report those unauthorized irrevocable letters of credit he had issued on his own to his associates.

It was also part of the scheme or artifice to defraud that **Defendant Eddington** caused to be submitted to the Board false monthly reports by the Cashier that did not list or include the additional irrevocable letters of credit issued by **Defendant Eddington** without the Board's knowledge or approval.

It was further part of the scheme or artifice to defraud that **Defendant Eddington**, when present at the monthly Board meetings, misrepresented to the Board the extent of outstanding irrevocable letters of credit by discussing only those outstanding letters of credit included in the monthly report to the Board, and not

those unauthorized letters of credit **Defendant Eddington** issued to his associates - even though, as **Defendant Eddington** well knew, he was required as part of his job duties to report all outstanding irrevocable letters of credit to the Board.

On or about September 30, 2011 in Ripley County within the Eastern District of Missouri,

**IRVIN R. EDDINGTON, Jr.**

the defendant herein, knowingly and with intent to deceive, executed the scheme and artifice as set forth above in that the defendant caused to be falsified the September 2011 monthly report to the Board that included certain authorized irrevocable letters of credit but did not include the unauthorized, unsecured irrevocable letter of credit issued to a person referred to herein as S.B. in the amount of $507,035.90.

When Eddington created and issued to his personal associates numerous unsecured irrevocable letters of credit from PCSB, he did it without authority to do so. He knew that those associates used the letters of credit to secure loans from other lending entities. An irrevocable letter of credit has value in the nature of a cashier's or certified check and obligates the bank in the amount of the letter's stated amount. When Eddington issued the letters to his personal associates, he illegally obtained credits owned by or under the custody or control of PCSB in violation of the statute. When Eddington left out the unauthorized letters of credit from the list he sent to the Cashier of letters of credit issued within his authority, he was concealing what he had done, creating a false impression that the list contained all of the irrevocable letters of credit he had issued that month when he knew that impression was untrue. He omitted the illegal letters of credit from his report to mislead and deceive the Board through the Cashier's running list sent to the Board in order to prevent the

Board from acquiring material information in the manner related in United States v. Colton, when it described common-law fraud. Eddington's actions constituted deceptive acts or contrivances intended to hide information, mislead, avoid suspicion and prevent further inquiry into a material matter, again as described by the Fourth Circuit in Colton (and approved in Steffen by the Eighth Circuit). Eddington's actions involved "suppression of the truth with the intent to deceive (concealment)...." Id.

It was deceit for Defendant Eddington to cause to be submitted to the Board false monthly reports by the Cashier that did not list or include the additional irrevocable letters of credit issued by Eddington without the Board's knowledge or approval.

It was further part of the scheme to defraud the bank that Defendant Eddington, present at the monthly meetings, misrepresented to the Board the number and extent of outstanding irrevocable letters of credit by discussing only those outstanding letters of credit included in the monthly report to the Board and not those unauthorized letters of credit Defendant Eddington issued to his associates even though the defendant knew he was required as part of his duties to report all outstanding irrevocable letters of credit to the Board. He failed to respond when those in attendance were asked if they had anything to include that may have been left off the monthly report to the Board. These acts constituted deceptive acts intended to hide information, mislead, avoid suspicion and prevent further inquiry into a material matter. These acts suppressed the truth with the intent to deceive and conceal from the Board what defendant had done in issuing unauthorized irrevocable letters of credit.

The indictment states further that on or about September 30, 2011, in Ripley County within the Eastern District of Missouri defendant executed the scheme set out above in that the defendant caused to be falsified the September 2011 monthly report to the Board that included certain

authorized irrevocable letters of credit but did not include the unauthorized, unsecured irrevocable letter of credit issued to a person referred to as S. B. in the amount of $507,035.90 in violation of Title 18, United States Code, Sections 1344 and 2.

The court finds the Indictment, containing numerous acts of common-law fraud as described in United States v. Colton, is sufficient and states an offense in violation of Section 1344.1.

Violation of Section 1344.2 is also sufficiently alleged in the Indictment. The Indictment alleges that Defendant Eddington executed or attempted to execute the scheme "to obtain ... credits ... owned by or under the custody or control of" the People's Community State Bank "by means of false or fraudulent pretenses, representations or promises," in violation of Section 1344.2.

The defendant obtained the letters of credit for others by issuing the unauthorized letters of credit to his personal associates. It is not necessary to violate the statute that a defendant obtain the credits for himself. United States v. Britton, 9 F.3d 708, 709 (8th Cir. 1993); United States v. Moede, 48 F.3d 238, 242 (7th Cir. 1995); United States v. Goldblatt, 813 F.2d 619, 624 (3d Cir. 1987). See United States v. Munoz-Franco, 487 F.3d 25, 43-44 (1st Cir. 2007) cert. denied (evidence was sufficient to support bank officers' bank fraud convictions; officers repeatedly concealed material information from bank board regarding the status of construction loans to codefendant, approved disbursements for work that was not completed, and prevented audits, causing bank to continue lending money to codefendant-owned companies, despite the companies' financial instability, which demonstrated officers' knowing scheme to conceal important information on many occasions.)

All of the references to Eddington's actions of issuing unauthorized irrevocable letters of credit, omitting the unauthorized letters of credit from the list he sent to the cashier of letters of credit

issued within his authority as concealing what Eddington had done, creating a false impression that the list contained all of the irrevocable letters of credit he had issued that month when he knew that impression was untrue considered with reference to Section 1344.1 are also applicable to Eddington's actions as violative of § 1344.2.

The same is true of Eddington's acts of omitting the illegal letters of credit from his report to mislead and deceive the Board through the Cashier's running list sent to the Board in order to prevent the Board from acquiring material information in the manner presented in United States v. Colton when it described common-law fraud. They all satisfy the requirements of bank fraud as found in § 1344.2. Eddington's actions constituted suppression of the truth with the intent to deceive. Colton, 231 F.3d 898-899. The allegations of the Indictment that Defendant Eddington, present at the monthly Board meetings, misrepresented to the Board the number and extent of outstanding irrevocable letters of credit by discussing only those outstanding letters of credit included in the monthly report to the Board and not those unauthorized letters of credit Defendant Eddington issued to his associates even though he knew he was required as part of his duties to report all of the outstanding letters of credit to the Board and by failing to respond when those in attendance were asked if they had anything to include that may have been left off the monthly report to the Board constituted deceptive acts intended to hide information, mislead, avoid suspicion and prevent further inquiry into a material matter. Defendant's acts suppressed the truth with the intent to deceive and conceal from the Board what defendant had done in issuing unauthorized irrevocable letters of credit. These acts all constituted a scheme to obtain credits owned by or under the custody or control of the People's Community State Bank by means of false or fraudulent pretenses and representations in violation of Section 1344.2.

In his Motion to Dismiss Count Two of the Indictment for Insufficiency and Failure to State Offense, defendant argues that Count Two does not advise him of the nature and cause of the accusation made against him.

On the contrary, Count Two specifies dates and activities in sufficient detail that were the same allegations made against him at a later time, he would be able to plead and prove double jeopardy.

Defendant claims that Count Two does not allege that : (1) Defendant obtained any property owned, controlled or under the custody of the bank; (2) Defendant made any express misrepresentations to the bank; nor (3) Defendant received any bribe or kick-back for his alleged conduct.

The defendant did obtain credits from the bank in the form of the unauthorized irrevocable letters of credit which he obtained for others. It is not necessary that Eddington obtained credit for himself in order that the statute be violated. See Britton, supra; Moede, supra; and Goldblatt, supra; see also the reference to Munoz-Franco, supra, for a factual situation somewhat similar to Eddington's.

The earlier portion of this Report and Recommendation recites at length the express misrepresentations the defendant made to the bank Board of Directors.

The defendant's reference to bribe or kick-back alludes to the defendant's citation of Skilling v. United States, 130 S.Ct. 2896 (2010), in his memorandum (p. 8) which concerned 18 U.S.C. § 1346 dealing with employee fraud in the employee's failure to provide his employer with honest services.

At the hearing on defendant's motion to dismiss, the government stated that it is not charging

Defendant Eddington under 18 U.S.C. § 1344.

Finally, in his motion to dismiss, defendant argues:

3. The statute under which Defendant is charged in count two of the indictment, 18 U.S.C. § 1344, is unconstitutional, is vague, is over-broad, is indefinite, fails to establish sufficient standards and denies due process of law in violation of the Fourteenth Amendment.

Although the defendant states in his motion that 18 U.S.C. § 1344 is unconstitutional, vague, over-broad, indefinite, fails to establish sufficient standards and denies due process of law in violation of the Fourteenth Amendment, all of these claims are conclusory. They are not mentioned again in Defendant Eddington's Memorandum in Support or in the Defendant's Reply to the Government's Response.

The government treats the constitutionality of § 1344 thoroughly in its Response (pp. 3,4).

Local Rule 7-4.01 Motions and Memoranda (A) provides: "Unless otherwise directed by the court, the moving party shall file with each motion a memorandum in support of the motion, including any relevant argument and citations to any authorities on which the party relies." Because the defendant has made only conclusory statements in his motion concerning the constitutionality of Section 1344 and has not even mentioned those conclusory allegations or supported them with proper statutory or case law in his memorandum or reply, the court considers those allegations waived.

Briefly, the court will state that federal statutes are presumed constitutional and should only be invalidated upon a plain showing that Congress exceeded its constitutional authority. United States v. Morrison, 529 U.S. 598, 607 (2000). Defendant has made no such showing.

The bank fraud, mail fraud (§1341) and wire fraud (§1343) statutes are considered similar and

-17-

cases interpreting one statute generally apply to the other statutes.[1] Neder v. United States, 527 U.S. 1, (1999). United States v. Solomonson, 908 F.2d 358, 364 (8th Cir. 1990). In United States v. Hook, 195 F.3d 299, 310 (7th Cir. 1999), the Seventh Circuit found the wire fraud statute constitutional as within the extensive reach of the Commerce Clause. In United States v. Conner, 752 F.2d 566, 574 (11th Cir. 1985), the Eleventh Circuit rejected the defendant's claim that the mail and wire fraud statutes were unconstitutional, finding "There is no merit in the claim of unconstitutionality."

The court finds that defendant's Motion to Dismiss Count Two of the Indictment for Insufficiency and Failure to State Offense should be denied.

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Dismiss Count Two of the Indictment for Insufficiency and Failure to State Offense (Document #23) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

---

[1] "The bank fraud statute was modeled after the mail and wire fraud statutes, and this court has stated that the bank fraud statute should be given the same broad construction as those statutes." United States v. Rimell, 21 F.3d 281, 287 (8th Cir. 1994). Indeed, we have held that "the case law interpreting [sections 1341 and 1343] should be used to interpret section 1344." United States v. Solomonson, 908 F.2d 358, 364 (8th Cir. 1990). Accordingly, our analysis of when an indictment sufficiently alleges a scheme to defraud for the purposes of any one of the mail, wire, or bank fraud statutes is applicable to all three statutes. United States v. Steffen, n. 3 at 1109.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of December, 2012.